IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMY L. PEARSON,

        Plaintiff,                          No. CIV S-08-3042 GGH

    vs.

MICHAEL J. ASTRUE,                 ORDER
Commissioner of
Social Security,

        Defendant.
                                   /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is granted, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), to the ALJ for further workup as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

BACKGROUND

        Plaintiff, born September 13, 1955, applied on September 6, 2005 for disability benefits. (Tr. at 63.) Plaintiff alleged he was unable to work due to carpal tunnel syndrome, left

hip/femur fracture, degenerative disc disease of the lower back, chronic Hepatitis C, and affective mood disorder. (Tr. at 21, 69, 408.)

In a decision dated June 14, 2007, ALJ Stanley R. Hogg determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for Title II benefits through the date of this decision.
>
> 2. The claimant engaged in substantial gainful activity until September 1, 2002.
>
> 3. The claimant's severe back pain due to degenerative disc disease of the lumbar spine; a history of left hip/femur fracture, status post open reduction and internal fixation in August 2005; a history of right fifth metacarpal fracture; a

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

|   |   |
|---|---|
|   | history of left first metacarpal fracture; and chronic hepatitis C, are considered "severe based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b). |
| 4. | These medically determinable impairments do not meet or medically equal on of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. |
| 5. | The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision. |
| 6. | The claimant has the retained residual functional capacity to perform a full range of light work activity on a sustained basis. Light work includes the ability to stand, walk and sit for at least six hours in an eight-hour period with regular break opportunities, and to lift 20 pounds occasionally and ten pounds frequently. (Social Security Ruling 83-10). |
| 7. | The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965). |
| 8. | The claimant is an individual who is closely approaching advanced age (20 CFR §§ 404.1563 and 416.963). |
| 9. | The claimant has a high school education. (20 CFR §§ 404.1564 and 416.964). |
| 10. | The claimant has no transferable work skills. |
| 11. | The claimant has the residual functional capacity to perform light work on a sustained basis. (20 CFR §§ 404.1567 and 416.967). |
| 12. | Using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, considering his age, education and work experience. |
| 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)). |

(Tr. at 31-32.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Provide the Consultative Examiner With the Medical Records Necessary to Make an Informed Judgment

3

Regarding Plaintiff's Impairments and Residual Functional Capacity; B. Whether the ALJ Rejected Plaintiff's and Third Party's Statements Regarding Pain and Functional Limitations Without Providing Clear and Convincing Reasons; and C. Whether the ALJ Failed to Show that Plaintiff Could Perform Substantial Gainful Work at Step Five by Utilizing the Grids Despite the Presence of Extensive Non-exertional Impairments and Limitations, Without the Expertise of a Vocational Expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

Records Provided to Consultative Examiner

Plaintiff first contends that the consultative exam ordered by the ALJ was conducted without the benefit of medical records, in violation of 20 C.F.R. § 404.1517.

The regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition. 20 C.F.R. § 404.1517. Background information is essential because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists." 20 C.F.R. § 404.1519a(a)(2).

4

As a general rule, the undersigned will order a case remanded when the consultative examiner was not given access to pertinent objective tests. These tests often provide the definitive evidence used in diagnoses of afflictions and their severity. The Commissioner is often heard to criticize a plaintiff's medical evidence as "not being supported by objective clinical evidence," but then, often enough so that it is troubling, himself fails to give the key examining physician the pertinent clinical evidence. There is little excuse for this.

Nevertheless, in this case, the lack of forwarding the pertinent objective evidence does not call for remand due to the dated nature of the evidence, and the fact that another reviewing physician who did have access to the evidence came to the same conclusion as the consultative/examining physician. Although Dr. Jaojoco only had access to some hand and finger x-rays and Dr. Ralik's 2006 report regarding the right hand and a Toradol injection for back and neck pain, this consultant's assessment is consistent with the October 13, 2005/May 1, 2006 opinion of the non-examining Disability Determination Services ("DDS") medical advisor, who did review plaintiff's medical records and based his assessment thereon. Those records included older x-rays of plaintiff's lumbar spine, one dated 2001 showing degenerative disc disease and facet arthropathy, and the other dated 2002, showing only degenerative narrowing in the same lower lumbar spine area, and moderate sized osteophytes. (Tr. at 113, 183, 182.) There was a more recent x-ray of the lumber spine, dated May 3, 2005, which showed degenerative disc disease at L3-4, L4-5, and L5-S1. (Id. at 305.) The DDS examiner also reviewed the only MRI of the back, dated October 25, 2002, four and a half years prior to Dr. Jaojoco's exam. It indicated "disc protrusion/extrusion with some thecal sac indentation L3-4 and L4-5," and "severe degenerative postoperative changes with central disc protrusions surrounded by some granulation tissue without significant nerve or thecal sac compromise, L5-S1." (Id. at 180, 113.) Despite these positive studies of the back, the record reveals relatively little treatment for this condition aside from medication. Plaintiff declined to participate in physical therapy, possibly because he had tried it in the past as a result of a 1987 injury, without

improvement. (Id. at 144.) The best diagnostic tool for assessing the type of spinal injuries at issue here is an MRI and the only one in the record would have been too outdated, even if the examining consultant had been able to review it. See www.spineuniverse.com/conditions/herniated-disc/can-herniated-discs-reduce-size-or-resorb (referring to studies indicating 63% resorption and 78% disc reduction after six to twelve months of care). Therefore, failure to include these records, all four to five years old at the time of the consultant's exam, was harmless error.

        Dr. Jaojoco also did not have access to hip x-rays, dated August 3, 2005, indicating a hip fracture, pelvic fracture and fracture of the femoral neck, for which an internal fixation was performed. (Id. at 187-88, 261.) The final outcome as of September 29, 2005, was a "mildly displaced internally fixated intertrochanteric fracture of the left hip." (Id. at 361, 362.) The DDS examiner did have these x-rays and reports, however. (Id. at 114.)

        Furthermore, Dr. Jaojoco performed a complete orthopedic exam to test the effects of these past injuries, and her report includes findings of tenderness and tightness over the right upper trapezius, as well as slight tenderness over the right cervical paraspinal muscles. There was also decreased lumbar lordosis, calluses on the metacarpal heads of both hands, negative straight leg raising bilaterally, and negative Spurling's test. (Tr. at 398.)

        Plaintiff's motor strength was 5/5 for all extremities except the right and left hip flexors which were assessed at 4/5, as limited by pain. Plaintiff was able to ambulate without an assistive device and his gait was normal. When walking on toes, plaintiff's gait was antalgic. When heel walking, plaintiff complained of pain. Tandem walking and heel to shin test were intact. Diagnoses were chronic neck pain,[2] myofascial pain disorder, chronic low back pain with no evidence of radiculomyelopathy on exam. There was a history of: herniated lumbar disc, status post discectomy, skull fracture, left hip/femur fracture, status post open reduction and

---

[2] There are no cervical spine x-rays in the record.

6

internal fixation, right fifth and left first metacarpal fracture. (Id. at 398.)

Dr. Jaojoco's report also includes a thorough two page chart outlining plaintiff's range of motion in all areas. (Id. at 400-01.) The right shoulder had limited abduction; the left shoulder had limited external rotation. Otherwise, the shoulders, elbows, and wrists were within normal limits. (Id. at 400.) Plaintiff's cervical spine was normal in regard to forward flexion and extension, but was slightly limited in lateral flexion and rotation. The lumbar spine was limited in all respects. Both hips were normal other than a slight limitation in flexion. Knees and ankles were within normal limits. (Id. at 401.)

In regard to plaintiff's functional capacity, this specialist in physical medicine and rehabilitation opined that plaintiff had "limited active range of motion of the lumbar spine with slight limitation of motion of the cervical spine, particularly lateral rotation and lateral flexion." She thought that plaintiff would be able to stand and/or walk for six hours, sit for six hours, lift or carry twenty pounds occasionally and ten pounds frequently, push or pull with the upper extremities twenty pounds or less only, occasionally bend, stoop, crouch, kneel, and climb. Plaintiff could do no crawling. He did not need an assistive device. (Tr. at 398.)

The DDS physician, like Dr. Jaojoco, assessed no postural limitations on plaintiff's ability to work. (Tr. at 28, 149, 154.) Finally, the ALJ specifically noted that there was no evidence to contradict this consultant's opinion. (Id. at 27.)

Plaintiff stresses that the failure to provide Dr. Jaojoco with Dr. Dominguez' in-depth report from 2003 was a glaring omission. This physician at UC Davis' Pain Management Center diagnosed lumbar degenerative disk disease, lumbar radiculitis, lumbar facet arthropathy, possible left sacroiliac joint dysfunction, chronic hepatitis C, and history of IV drug use in the 1970s. (Tr. at 152.) Access to such a report was not essential because Dr. Dominguez' report was dated January 27, 2003, more than four years before Dr. Jaojoco's examination, rendering it somewhat less relevant due to its age. Furthermore, the DDS reviewer had access to this report along with all of the other medical records. Reliance on the DDS report may constitute

7

substantial evidence "when [non-examining] opinions are supported by other evidence in the record and are consistent with it." Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999). It is true that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984)).  Nevertheless, the opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Id. at 830-31.

Because the DDS report supported the report of Dr. Jaojoco, it constitutes substantial evidence upon which the ALJ may rely.

Plaintiff next claims that the consulting physician's exam failed to test plaintiff for carpal tunnel syndrome by performing the Tinel's test, the Phalen's test, and a nerve conduction study, after the ALJ had ordered consultation in part for this reason. As discussed above, Dr. Jaojoco tested plaintiff's wrists for extension, flexion, radial deviation and ulnar deviation, and both wrists were within normal limits. (Tr. at 400.) It is true that there is no evidence in the record of a diagnosis of carpal tunnel syndrome. On May 10, 2005, plaintiff complained of numbness and tingling in fingers but his treating physician made no diagnosis as a result of these symptoms. (Tr. at 284.) Nevertheless, plaintiff testified at the hearing that he had been tested for carpal tunnel syndrome but it was more than a few years ago, and therefore any record of it is probably outdated. (Id. at 439-40.) In response, the ALJ stated that he was going to order a consultative exam for carpal tunnel syndrome as well as for the back and hip problems. (Id. at 451-52.)

Specific tests are used to diagnose carpal tunnel syndrome: Tinel test, Phalen test, and electrodiagnostic tests such as a nerve conduction study, electromyography, ultrasound or

MRI.  See www.ninds.nih.gov.  Since the consulting examiner did not perform any of these tests in accordance with the ALJ's instructions, the case must be remanded for further workup.[3]  Remand is especially required in light of the ALJ's finding that plaintiff can do light work because a diagnosis of carpal tunnel syndrome may impact such a classification.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or Remand is GRANTED pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for Summary Judgment is DENIED, and this matter is remanded for further consultative exam in regard to carpal tunnel syndrome.  The Clerk is directed to enter Judgment for plaintiff.

DATED: 07/30/2010                                                   /s/ Gregory G. Hollows

                                                                                  _____
                                                                                  GREGORY G. HOLLOWS
                                                                                  U.S. MAGISTRATE JUDGE

GGH/076
Pearson3042.ss.wpd

---

[3] Plaintiff also challenges the ALJ's credibility finding.  Because the matter is being remanded for further proceedings, the court will not reach this argument.  However, on remand, if plaintiff's testimony regarding his subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  Similar standards apply to third party statements.  See Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006) (holding that ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination).
    The issue of whether the grids were properly used or whether a vocational expert is necessary must also await further development of this record as a diagnosis of carpal tunnel syndrome may change the analysis at this later step.